UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Eastern Division)

|  |  |  |
|---|---|---|
| 29 GREENWOOD, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MAYOR RUTHANNE FULLER, DOUG CORNELIUS, PETER DIMOND, KATY HAX HOLMES, JOHN LOJEK, ANTHONY CICCARIELLO, NEWTON HISTORICAL COMMISSION and CITY OF NEWTON, | ) ) ) ) ) ) | Case No. 1:23-cv-10800-FDS |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S SUR-REPLY BRIEF IN SUPPORT OF ITS
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST SUPPLEMENTED AND FIRST AMENDED COMPLAINT**

Plaintiff 29 Greenwood, LLC ("29 Greenwood" or the "Plaintiff") hereby submits this *Sur-reply Brief* in support of its *Opposition to Defendants' Motion to Dismiss the First Supplemented and Amended Complaint* (the "Opposition" to the "Motion to Dismiss"), [ECF No. 37]. The Defendants once more seek to dismiss Plaintiff's sufficiently pleaded claims by asking the Court to resolve factual disputes at this premature and preliminary stage in plain contravention of Fed. R. Civ. P. 8(a) and 12(b)(6). The Court should reject the Defendants' attempts to litigate the merits of the case at the motion to dismiss stage and deny the Defendants' Motion. In support of this request, and in response to the Defendants' *Reply to Plaintiff's Opposition to the Motion to Dismiss Plaintiff's First Supplemented and Amended Complaint* (the "Reply"), [ECF No. 38], Plaintiff states as follows:

I. **THE FACTUAL ALLEGATIONS SUPPORTING PLAINTIFF'S TAKINGS CLAIM ARE SUFFICIENT TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Defendants argue in the Reply that Plaintiff's factual allegations are subject to analysis at the motion to dismiss stage, and therefore, the legal sufficiency of Plaintiff's taking claim should be subject to review by the Court. *See* Defendants' Reply [ECF No. 38], p. 1. Plaintiff has never denied that the sufficiency of its allegations is subject to review at the motion to dismiss stage. On the contrary, Plaintiff outlined in its Opposition the standard by which the Court's analysis must be conducted (*see* Plaintiff's Opposition to Motion to Dismiss [ECF No. 37], p. 4), that is, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Under this standard, Plaintiff reiterates that the factual allegations of its amended pleading are sufficient to require denial Defendants' Motion to Dismiss as to Plaintiff's takings claim.

Furthermore, Defendants argue that under *Martone Place v. City of Springfield*, 2017 U.S. Dist. LEXIS 196013 (Dist. Mass. 2017), a case that was cited in Plaintiff's Opposition, the amended pleading in this case must be dismissed. *See* Defendants' Reply [ECF No. 38], pp. 2-3. The *Martone* Court found that allegations concerning the defendant's denial of the plaintiff's request for a land-use permit for a specific project did not plausibly state a takings claim because, despite allegations that the denial was motivated by animus toward the plaintiff's specific project, the sum of the plaintiff's allegations did not support an inference that the defendant intended to deny all future development plans on the project site. *See* Reply Memorandum [ECF No. 38], pp. 2-3; *Martone* 2017 U.S. Dist. LEXIS 196013. As the Defendants here point out in their Reply Memorandum, the *Martone* plaintiff's takings theory

essentially failed where that plaintiff did not sufficiently allege a total deprivation of any viable use of the property. *See* Reply Memorandum [ECF No. 38], p. 2-3; *Martone* 2017 U.S. Dist. LEXIS 196013.  Contrary to the circumstances in *Martone*, here, the allegations in the Amended Complaint do support a reasonable inference that the Defendants intend to deny any proposed use of the Property by the Plaintiff or any other future developers. Indeed, the Defendants exchanged several emails expressly indicating that any proposal by the Plaintiff would be denied, stating that they do not even know what more to request from Plaintiff in the public hearings, and expressing the desire to "send a message" to other developers that no profitable use of the property will ever be permitted.  *See* Amended Complaint, [ECF No. 28] at ¶¶ 87, 134, and 135.

Further, unlike in *Martone*, here, the challenged conduct unfolded after the Plaintiff obtained all necessary permitting and undertook construction in good faith compliance with the parameters imposed by the permits and the certificate of appropriateness. Unlike in *Martone*, there is no alternate path forward for the Plaintiff here, as the previously-approved project has already commenced. There is no returning to the drawing board to find some other use of the Property that might be more palatable to the Defendants or might allow the Plaintiff to escape the Defendants' demonstrated animus. Where the allegations support the inference that Defendants intend to prevent the Plaintiff from obtaining the approval necessary to proceed not just with its restoration project but with any project on the Property, the Plaintiff has sufficiently stated its cause of action under a takings theory.

**II.    THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES CONDUCT ON THE PART OF THE INDIVIDUAL DEFENDANTS SUPPORTING A CLAIM UNDER THE MASSACHUSETTS CIVIL RIGHTS ACT.**

    **A. The Amended Complaint identifies specific actions taken by the Defendants by which they deprived Plaintiff of its constitutional rights.**

Defendants argue that Plaintiff failed to sufficiently tie specific actions of the named individuals to the scheme of harassment which Plaintiff contends is evidence of coercion within the context of the Plaintiff's MCRA claim. *See* Defendants' Reply [ECF No. 38], pp. 4-5. Defendants' argument in this regard ignores extensive allegations in the Amended Complaint that relate to specific actions on the part of individually named Defendants that, when taken together, reveal the existence of a deliberate scheme not only against Plaintiff, but also against future developers that may want to make improvements on or otherwise lawfully use the Property. *See* Plaintiff's Opposition to Motion to Dismiss [ECF No. 37], p. 12; *see also* Amended Complaint, [ECF No. 28] at ¶¶ 223-235. Defendants' Reply Memorandum further overlooks the issue that fact-specific inquiries about improper means and harassment actions are better addressed at a later stage in the proceedings. *See Sinotau Pharm. Group v. Navidea Biopharmaceuticals*, Inc., 211 F. Supp. 3d 375, 381 (D. Mass. 2016) (allegations suggesting improper means are aspects better addressed after the motion to dismiss stage).

    **B. Defendants' criminal complaint can be considered as part of the "scheme of harassment," and further supports the MCRA claim in its own right.**

Defendants cite to a handful of cases for the proposition of law that only conduct involving administrative decisions can be considered as part of a "scheme of harassment" under the MCRA. *See* Defendants' Reply [EC No. 38], p. 5. However, the cases cited to not definitively state this; instead, they essentially articulate that administrative decisions do not qualify as "threats, intimidation or coercion" under the MCRA *unless* the administrative decisions are part of a larger "scheme of harassment." *See id.* (citing *Pheasant Ridge Associates Ltd. Partnership v. Town of Burlington*, 399 Mass. 771, 781 (1987) (which does not contain any direct reference administrative decisions that are part of a "scheme of harassment"); *Smith v. Longmeadow*, 29

Mass. App. Ct. 599, 603 (1990) ("Adverse administrative action, at least when not part of a scheme of harassment, does not amount to 'threats, intimidation or coercion'"); *Murphy v. Town of Duxbury*, 40 Mass. App. Ct. 513, 518 (repeating quotation in preceding parenthetical and adding that "[i]n order to establish a 'scheme of harassment' there must be some evidence of animus against the plaintiffs or their project and an attempt to thwart the project through an adverse administrative action unrelated to the board's legitimate concerns"); *Freeman v. Planning Bd.*, 419 Mass. 548, 565 n.17 (jury instructed that "adverse administrative action by some agency, such as a Planning Board, unless it is part of a scheme of harassment, does not amount to threats, intimidation or coercion and does not violate [the Act]"); *Martone*, 2017 U.S. Dist. LEXIS 196013 (even where elements of "scheme of harassment" cited in preceding parentheticals are present, "the alleged 'scheme of harassment' must be designed to force a property owner to forgo development in order to constitute coercion that is actionable under the MCRA")).

  The Defendants do not present a single case that explicitly states that only administrative decisions can qualify as part of a "scheme of harassment" amounting to coercion under the MCRA, nor has the Plaintiff been able to locate any caselaw that stands for that proposition. Instead, the cases generally provide that "[i]n order to establish a 'scheme of harassment' there must be some evidence of animus against the plaintiffs or their project ***and*** an attempt to thwart the project through an adverse administrative action unrelated to the board's legitimate concerns." *Murphy*, 40 Mass. App. Ct. at 518 (emphasis added) (citing *Freeman*, 419 Mass. at 646). While the Defendants suggest that the criminal enforcement action brought by the City cannot be considered as part of the "scheme of harassment" amounting to coercion under the MCRA, Plaintiff's position is that the criminal enforcement action is both evidence of animus

against the Plaintiff and its project and evidence in its own right of coercion. Taken together with the many allegations in the Amended Complaint of conduct on the part of the individually-named Defendants calculated to deter and malign the Plaintiff and its project, and in consideration of the fact that the Defendants' alleged misconduct provided the original basis for accruing the fines which are the subject of the criminal complaint, the criminal complaint can and should be considered as evidence of animus within the "scheme of harassment" deployed by the Defendants in this case. When viewing the sum total of the Plaintiff's allegations, it becomes clear that Plaintiff has sufficiently alleged conduct on the part of the Defendants amounting to a "scheme of harassment" intended to oust the Plaintiff from use of its own Property.

      Defendants also repeat that *Brunelle v. Lynn Public Schools*, 433 Mass. 179 (2001) is the controlling authority in this case, reiterating that *Brunelle* stands for the proposition that "absent evidence of heavy-handed use of police power, or other physical force, the mere act of filing a criminal enforcement action does not have a 'natural effect' of coercing, threatening or intimidating a Plaintiff's exercise of rights." *See* Defendants' Reply [ECF No. 38], p. 6.  Plaintiff again points out that *Brunelle* involved certain caveats that are simply not present in this case. That the criminal complaint in *Brunelle* was not sufficient to support a finding of coercion against that specific plaintiff does not require the same consequence to be automatically applied to this case. This is especially so where in *Brunelle*, by agreement of the parties, the action was removed from the criminal docket, pending resolution of the issues raised in the civil action. *See Brunnell*, 433 Mass. at 183.  That is, the criminal charges did not chill the *Brunelle* plaintiffs' exercise of their rights, because the criminal actions were withdrawn—a situation that is categorically different from the one this case, in which these criminal charges and enforcement of an excessive fine are ongoing and will have a direct and substantial economic impact

6

impeding Plaintiff's exercise of its rights (s*ee* Plaintiff's Opposition to Motion to Dismiss [ECF No. 37], pp. 15-16). The timing of filing the criminal complaint further suggests retaliation on the part of the Defendants, as the criminal complaint quickly followed the commencement of this lawsuit, in which the Plaintiff raises causes of action against individually named Defendants and seeks to vindicate its property rights for the first time. It can be reasonably inferred from the facts alleged that, upon filing of this suit, Defendants began to realize that time was no longer "on their side" in their scheme to oust the Plaintiff from its Property, and so Defendants retaliated by dragging the Plaintiff into criminal court in pursuit of the very fines this suit stands to challenge. Were this not the case, then surely the City would have no reason not to agree to stay the criminal proceedings pending resolution of civil proceedings that may very well void the accrual of the fines sought in the criminal court. Here, Plaintiff maintains that its allegations concerning the criminal matter support an inference that the criminal complaint does, indeed, have a "natural effect" of threatening, coercing and intimidating the Plaintiff in exercising its rights. The Plaintiff's allegations further support a finding that, as part of the "scheme of harassment," the criminal complaint is part of Defendants' designs to force the Plaintiff to forgo development of its Property. *See Martone*, 2017 U.S. Dist. LEXIS 196013.

### C. Plaintiff's allegations about Defendant's scheme of harassment are actionable under MCRA.

Defendants also suggest that the allegations in Plaintiff's Amended Complaint "track exactly with those of *Martone*," and involve, at best, a direct deprivation of rights, which is not actionable under MCRA. *See* Defendants' Reply [ECF No. 38], pp. 6-7. Defendants add that, as it happened in *Martone*, Plaintiff's claims are merely referred to the potential approval of development projects, and the denial of such projects only involved an economic impact parallel to a regulatory taking, but that such a scenario does not provide a basis for a MCRA allegation.

7

*Id*. at 7. Defendants' Reply further contrasts the issues raised in the instant matter with those implicated in *Kennie v. Natural Res. Dep't*, 451 Mass. 754 (2008), arguing that because this case is more factually similar to *Martone* than to *Kennie*, the Plaintiff here has not sufficiently alleged coercion under the MCRA. *Id.* at 8-9. This compare-and-contrast exercise is wholly misguided where direct analogs exist between the facts alleged here and those presented in *Kennie*, despite the fact that neither *Martone* nor *Kennie* serves as a perfect comparator to this case.

As the Plaintiff indicated in the above discussion of *Martone* in § I of this Sur-reply, this case does not involve the denial of a building permit, as was the case in both *Martone* and *Kennie*. *See Martone*, 2017 U.S. Dist. LEXIS 196013; *Kennie*, 451 Mass. 754. Instead, this case involves a bait-and-switch in which the Plaintiff lawfully began construction pursuant to duly obtained permits and a certificate of appropriateness, only to be maliciously and unlawfully impeded by the Defendants from any development of its Property whatsoever and then strung along with the false promise of possible remediation. As Defendants note, "[i]n the land-use context, the line between direct deprivation and coercion is not necessarily a bright line." *Martone*, 2017 U.S. Dist. LEXIS 196013 at *53. The operative distinction drawn by the *Martone* and *Kennie* courts appears to be whether the property right those plaintiffs sought to vindicate was in the withheld permit itself—as was the case in *Martone*—or whether the property right at issue related more broadly to the plaintiffs' interest in using, enjoying and improving their property, with permit denial being the catalyst of interference with said right—as was the case in *Kennie*. The *Martone* Court found that, where denial of the plaintiffs' permit caused delays in their project that led to the termination of a contract with MassDOT due to noncompletion of the project by the agreed-upon deadline, the permit denial was direct deprivation of rights not actionable under MCRA, because plaintiffs had not alleged that the defendants intentionally

8

caused delays to coerce the plaintiffs to withdraw from the MassDOT contract, nor had the plaintiffs alleged they were foreclosed from alternative avenues of development. *See Martone*, 2017 U.S. Dist. LEXIS 196013 at *53-54. In *Kennie*, however, the court found that, because the "plaintiffs' claim in [that] case [was] not solely based on their interest in the permit, but on their interest in the land on which they had a constitutionally protected right to make improvements[,]" the defendant's conduct in seeking to interfere with the permitting process and the resulting unfavorable outcome could constitute actionable coercion under the MCRA. *Kennie*, 451 Mass. at 762.

Despite the Defendants' assertions to the contrary, the facts here much more closely resemble those at issue in *Kennie* than those at issue in *Martone*. Unlike in *Martone*, the Plaintiff is not merely aggrieved by the denial of a permit for the Plaintiff's preferred Project. Instead, as in *Kennie*, the Plaintiff here alleges that the Defendants have tainted, abused and manipulated public processes to prevent the Plaintiff from using, enjoying or improving its Property in any way—all with an eye toward one day stripping the Plaintiff of its Property entirely. As alleged in the Amended Complaint, Plaintiff contends that the Defendants wrongfully found the Plaintiff to be in violation of the certificate of appropriateness and then imposed extortionate fines for the purported violations while unilaterally refusing to allow the Plaintiff to even enter the Property—let alone to remediate the conditions thereon to bring the Property into compliance. In order to accomplish this, as alleged by the Plaintiff, the Defendants went out of their way to foment public disapproval, which they then channeled toward the Plaintiff rather than accepting responsibility for the fact that they had approved and certified plans that, when complied with, evidently led to misinformed and misguided public upset. As in *Kennie*, based on the aggregate of the Defendants' misconduct and their scheme of harassment, once it became clear that the

Defendants would never approach their dealings with the Plaintiff in good faith and that further attempts to obtain necessary approvals were futile, the Plaintiff was forced to abandon all development of the Property. The Plaintiff has since been burdened by the carrying costs of the Property despite being unable to use it in any way.

Here, the Plaintiff has raised allegations under the MCRA that extend beyond a direct deprivation of rights, and the Defendants' argument to the contrary should be rejected accordingly.

### III. PLAINTIFF HAS VIABLY ALLEGED IMPROPER INTERFERENCE WITH A BUSINESS EXPECTANCY ADEQUATE TO SURVIVE DISMISSAL AT THIS STAGE.

Defendants state that Plaintiff has not been able to present a viable tort liability theory, since according to them, there was no interference with Plaintiff's business relationship or interruption of a sales plan. *See* Defendants' Reply [ECF No. 38], p. 9. Defendants argue that Plaintiff did not present enough factual allegations regarding an abuse of the municipal ordinances or specific knowledge about Plaintiff's business plan, adding that Katy Hax Holmes's phone call inquiring about the property potential sale is not logically connected to Plaintiff's claim. *Id*. at 9-10.

Defendants' Reply in this aspect is merely a repetition of their Motion to Dismiss and does nothing to refute Plaintiff's contention that even a probable future business relationship from which a reasonable financial benefit is expected is enough to survive a motion to dismiss under Rule 12(b)(6). That situation was certainly known by Defendants, and contrary to the assertions in their Reply, Plaintiff's claims are not supported merely by Katy Hax Holmes's irate phone call seeking to obtain certain information, but are further evidenced by the numerous emails cited in the Amended Complaint by which the members of the Newton Historical

Commission discussed Plaintiff's proposals with hearty disapproval and with an awareness of the Plaintiff's contemplation of future sale of the Property. The Amended Complaint further contains specific allegations about the individual Defendants who publicly announced disapproval of the project and drummed up an angry mob, which negative publicity they knew or should have known would chill Plaintiff's prospective business relationships.

### IV. DEFENDANTS' ASSERTIONS OF IMMUNITY ARE NOT SUFFICIENT TO DISMISS THE AMENDED COMPLAINT AT THIS STAGE IN LIGHT OF PLAINTIFF'S FACTUAL ALLEGATIONS.

Defendants argue once more that Plaintiff's Counts II-III—alleging violations of MCRA and tortious interference with a business expectancy against the individual City officials—must be dismissed because the individuals charged are entitled to both qualified and common law immunity. *See* Defendants' Reply [ECF No. 38], p. 10. Defendants allege that Plaintiff has failed to specify factual allegations of malice and negligence from which corruption can be inferred. *Id*.

Nothing new is presented in Defendants' Reply that has not been already argued in their Motion to Dismiss. Defendants simply reiterate their position that the factual allegations contained in the Amended Complaint do not rise to the level of malice and corruption, contrary to Plaintiff's assertions that it can be reasonably inferred from the facts alleged in the Amended Complaint that the Defendants were not merely negligent but rather acted plainly incompetently and/or knowingly violated the law. Defendants' arguments do nothing more than demonstrate the existence of a factual dispute between the parties, that make dismissal of the action inappropriate at this stage. See *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997). Defendants' Reply also failed to address Plaintiff's argument that the assertions of immunity at this stage are inextricably intertwined with the factual foundations of Plaintiff's allegations, and

therefore, dismissal is inappropriate.  *See* Plaintiff's Opposition to Motion to Dismiss [ECF No. 37], pp. 20-21.

Moreover, Defendants rely again in *Martone* to establish that qualified immunity is applicable in this case, since denying a land use permit does not involve the deprivation of property rights. Defendants' argument rests in the premise that Plaintiff's allegations involve a mere zoning dispute, which has been denied by Plaintiff without a proper response by Defendants. As discussed above in §§ I and II.C, *Martone* is not an apt analogue to this case, where this controversy goes beyond a permitting dispute and instead involves a holistic and well-strategized deprivation of Plaintiff's property rights. As alleged in the Amended Complaint, the facts here support a finding that there was a clear strategy designed and executed to deprive Plaintiff of its property rights, supported by specific communications between Defendants, in which they acknowledged the existence of a policy oriented to deny any sort of proposal put in place by Plaintiff and to only approve an scenario in which no profit could be guaranteed.  *See* Plaintiff's Opposition to Motion to Dismiss [ECF No. 37], pp. 11-12.  Defendants' characterization of this case as a mere zoning disagreement, in opposition to Plaintiff's factual allegations about the existence of a policy against it, reveals again the existence of a factual dispute that cannot be resolved in the pleading stage.

## **CONCLUSION**

WHEREFORE, Plaintiff 29 Greenwood, LLC hereby respectfully requests that the Court DENY Defendants' Motion to Dismiss Plaintiff's First Supplemented and First Amended Complaint.

Respectfully submitted,

29 GREENWOOD, LLC,

By its attorneys,

*/s/ Thomas H. Curran*
Thomas H. Curran, BBO # 550759
tcurran@thcalaw.com
Rachel E. Greenberg, BBO #711019
rgreenberg@thcalaw.com
Eduardo Romero Tagle, *pro hac vice*
eromerotagle@thcalaw.com
Thomas H. Curran Associates, LLC
Ten Post Office Square, Suite 800 South
Boston, MA 02109
(617) 207-8670

Dated: December 28, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non registered participants on December 28, 2023.

*/s/ Thomas H. Curran*

13